## Commonwealth, et al. v. Hazel.

(Decided October 1, 1913).

### Appeal from Daviess Circuit Court.

1. Statutes—Defining Tax Broker—Validity.—A statute, defining as a tax broker one whose purchases aggregate $500 at a tax sale, is not invalid as based on an unreasonable classification.

2. License Tax—Action by Revenue Agent to Recover—How Computed.—In computing the amount of the purchases, the State, county and district taxes, and cost and commissions are to be included.

3. License Tax—Tax Broker—Liability for License Tax.—The fact that the purchaser buys at the request of the property owner under an agreement that he is to have all the rights of a purchaser at a tax sale, does not affect his liability for the license tax.

J. P. WHITTINGHILL for appellants.

BIRKHEAD & WILSON for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE HOBSON—Reversing.

Section 4224, Kentucky Statutes, provides that before engaging in any occupation or selling any article named therein, the person desiring to do so, shall procure a license and pay the tax therein required. The last subdivision of the section is in these words:

"Any person or corporation who shall purchase lands sold for taxes due this Commonwealth, as provided in this chapter, shall be deemed a tax broker whenever the amount of such purchases shall aggregate five hundred dollars, and shall, within fifteen days after the said sale, procure a license as such from the Auditor of Public Accounts. Such tax brokers shall pay for said license an amount equal to fifteen per centum of the aggregate amount of the purchases made by him, and the sales to him shall not become effective until said license shall have been procured. No claim shall be allowed by

the Auditor to such purchaser for defects of title, errors or assessment or otherwise.

"Any person or corporation who shall fail to procure the license as hereinabove required, or who violates any of the above provisions, shall, on conviction, be fined not less than twenty-five nor more than one hundred dollars for each offense."

This action was brought by a revenue agent in the Daviess County Court in the name of the Commonwealth against W. S. Hazel, it being charged in the petition that in January, 1908, 1909 and 1910 he purchased land at tax sales made by the sheriff at the court house door in Owensboro, Kentucky, the amount of his purchases at each sale being over $500; but that he had not paid the license tax in any year. Judgment was prayed against him for the license taxes amounting to about $400, with interest and a penalty of twenty per cent. An agreed statement of facts was filed and on these facts the county court gave judgment against Hazel. He appealed to the Daviess Circuit Court. In the circuit court the case was submitted upon the same agreed facts. The circuit court dismissed the plaintiff's petition, holding the statute unconstitutional. The Commonwealth appeals.

The circuit court was of opinion that under the Constitution all persons engaged in any business or profession must be taxed or else the taxation of one class without any tax on the other, would be a discrimination that the Constitution does not authorize; that under the statute in question a person might be a tax-broker, and not be subject to a license fee, if he did not do $500 worth of business, while the man who did $500 worth of business, would have to pay a license fee. In Covington v. Dalheim, 126 Ky., 26, a license upon grocery stores, graded according to the number of delivery wagons and horses employed, was held unconstitutional in that the tax was imposed upon grocers who delivered by wagon, and those who did not use a wagon were exempted. In Read v. Graham, 31 R., 1659, the same principle was applied to milk dealers, who were taxed in the same way. In Hager v. Walker, 128 Ky., 1, a license tax on real estate agents was declared unconstitutional because it exempted all real estate agents outside of cities and towns from the payment of the tax. But none of these cases seem to us to apply here. In Bitzer v. Thompson, 105 Ky., 574, it was held that a license tax on claim brokers did not apply to a person who bought a few claims as a side invest-

ment, but did not follow the business of buying claims. Similar rulings have been made in other States. Thus a man who keeps a general store is not a junk dealer, although he may occasionally take in trade a piece of second hand furniture. (Duluth v. Bloom, 21 L. R. A., 689; Commonwealth v. Ringgold, 65 N. E., 374; Johnson v. Williams, 26 N. E., 167, 30 Cyc., 1164.)

The Legislature did not intend that everyone who bought property at a tax sale should be regarded a tax broker. It was intended to reach the class of persons who make it a business to deal in this class of property, and in declaring that one whose purchases at a sale should aggregate $500 should be deemed a tax broker, it was merely laying down a test by which it could be determined whether a man was or was not a tax broker. License taxes are often regulated by the amount of business done; and it is not unreasonable discrimination when the Legislature declares that a person whose purchases at a sale do not aggregate $500 shall not be deemed a tax broker. It is true that some hardship may result. The man whose purchases amount to $490 at a sale will not be taxed, while the man whose purchases amount to $510 will be taxed. But in any classification there must be a line drawn, and those on one side of the line will be exempt while those on the other side of the line will be subject to the tax. Manifestly it would not do to require every body who buys at a tax sale a piece of property, to pay a license tax. The act is not aimed at the man who makes an occasional purchase, but at him who makes such purchasing his business, and is not invalid. It rests on a reasonable classification.

It is earnestly insisted that it is unreasonable that the State should sell land to the highest bidder for the non-payment of taxes, and on the other hand levy a tax on persons who bid at the sale; thus deterring people from bidding and preventing the property from selling as readily as it would. But the whole matter of collecting the public revenue rests in the sound discretion of the Legislature, and in the absence of a constitutional provision on the subject, the question is purely legislative and not judicial. The Legislature may declare the public policy of the State in the absence of a constitutional provision to the contrary.

In the agreed facts it was shown that Hazel's purchases at each of the sales amounted to less than $500 if the county taxes and the cost were not included. It is true that in the statute the words used are "lands sold for taxes due this Commonwealth;" but by section 4129, Kentucky Statutes, the sheriff is by virtue of his office the collector of all State, county and district taxes, unless directed to be paid to some other person. By section 4148, Kentucky Statutes, all State, County and district taxes except as otherwise provided shall be due on the first day of March after the assessment. Section 4151, Kentucky Statutes, provides that when land is sold for taxes, and no one will bid the amount of the taxes, interest and cost, it shall be the duty of the sheriff to purchase same for the State, County and taxing district having taxes against the delinquent for the amount of the taxes due, interest and penalty; cost and commission thereon, the owner to have the right to redeem the land at any time within two years. It will thus be seen that when the land is sold for taxes due the State, it must also be sold for the county taxes, and if no one else will bid, the sheriff must bid in the land for the State and the county for both the State and the county taxes. The county is only an arm of the State government. Its taxes are levied by the authority of the State, and are taxes due the Commonwealth within the meaning of the statute in question; for purchasers at tax sales must buy for the county taxes as well as the State taxes. The amount for which the sale is made is the unit on which the license tax is to be computed. The words "the amount of such purchases" must mean the price paid for the various pieces of property.

In the agreed statement of facts, it was also set out that Hazel bought a part of the property at the request of the owners and under an agreement with them by which the property he so purchased might be redeemed by them upon substantially the same terms and conditions as fixed by the statute for the redemption of property sold for taxes. There was nothing in this agreement to exempt Hazel from the license tax. The agreement was simply that Hazel would buy the property at the sale and hold it as purchaser, the owners preferring that he should buy it, rather than some one else. He did not buy it for them, but for himself, and he was to have all the rights of a purchaser at a tax sale.

We, therefore, conclude that the statute is valid, and that neither of the defenses set out in the agreed facts is maintainable.

Judgment reversed and cause remanded for a new trial.